IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| United States of America,<br><br>        Plaintiff,<br><br>v.<br><br>Mary Rodriguez Noriega and Robert Reynoso,<br><br>        Defendants. | Case No. 3:16-cr-11<br><br>**MEMORANDUM OPINION AND ORDER DENYING MOTIONS TO SUPPRESS AND MOTIONS TO COMPEL** |

## INTRODUCTION AND SUMMARY OF DECISION

Before the court are Mary Rodriguez Noriega's Motion to Suppress[1] and Robert Reynoso's Motion to Suppress Joining in Noriega's Motion to Suppress.[2] Noriega and Reynoso contend that real-time warrantless location tracking of a cell phone allegedly belonging to Noriega constituted an unreasonable search in violation of the Fourth Amendment. Specifically they challenge an order (the "Ping Order") issued by an Arizona state judge, authorizing the use of mobile device ping and Signal Information Collection System ("S.I.C.S.") tracking on the phone number (701) 781-2568 under the Stored Communications Act (SCA), 18 U.S.C. § 2703; and the Arizona pen register/trap and trace statute, A.R.S. § 13-3017. Noriega and Reynoso seek the suppression of all evidence obtained as a result of this real-time location tracking.

The court concludes as an initial matter that Reynoso does not have standing to challenge the tracking of phone number (701) 781-2568. The court also concludes that the Ping Order was the functional equivalent of a warrant supported by probable cause and that, even if the search was warrantless, the Leon good faith exception applies. The motions to suppress are **DENIED**.

---

[1] Doc. #123.
[2] Doc. #124.

Because Noriega's motions to compel[3] seek evidence related directly to the issues raised in her suppression motion, the court denies the motions to compel as **MOOT**. The motions for a hearing on the motions for compel[4] are also denied as **MOOT**.

## BACKGROUND

On May 18, 2015, Drug Enforcement Administration (DEA) Special Agent Matthew Robl applied for "an order authorizing the installation and use of the [S.I.C.S.] and precision location of mobile device (Ping) over UF2568 and (701) 781-2568" for a period of sixty days. At the time, Agent Robl and Phoenix Police Detective Joe Marr were conducting an ongoing criminal investigation of the "[Jose Valdemar] Garcia-Moreno Drug Trafficking Organization." Agent Robl and Detective Marr had already applied for and received authorization for Title III telephonic interception of (701) 781-2568. In an affidavit in support of his application for the Ping Order, Agent Robl provided a synopsis of five calls and one text message that were intercepted from (701) 781-2568:

| | |
|---|---|
| 5/14/15 2:49 p.m. | Call: "UF2568 referred to Valdemar as her cousin. UF2568 said that they called the guy (believed to be the drug source in California), and they wanted to meet them at a park the night prior. UF2568 said that they did not want to meet there at night because everyone in California knew that park was hot (commonly referred to law enforcement presence). UF2568 said that her brother asked for the address of the house they were going to meet. They told him (UF2568's brother) that they were not going to meet at a house, so UF2568's brother asked to meet during the day due to their apprehension about meeting at the park at night. UF2568 said that she had her friend, Nacho, call them, and was told to go over around 3 PM. Nacho was told to tell them (California sources) that he was just sent to do a job, if they started asking questions. Valdemar said that he thought they were going for three (believed to be 3 units of an unknown drug), but would probably be given five (5 units of unknown drug). Valdemar said if they could not get |

---

[3] Docs. ## 157 & 189.
[4] Docs. ## 158 & 189.

2

| | |
|---|---|
| | those (believed to be drugs in California), then he had some (illegal drugs) in Phoenix. UF2568 asked if they should still pick those up (in California), and Valdemar told her to pick them up because the ones in Phoenix could wait. UF2568 said that they were going to go pick them (illegal drugs in California) up, and would be on their way. UF2568 said she would call Valdemar back when they picked them up." |
| 5/14/15 2:55 p.m. | Call: "UF2568 asked Valdemar whose name the Honda was in. Valdemar told her it was in Marcos Amaya Aldaco. UF2568 asked Valdemar to send the name over a text message. UF2568 told Valdemar that she was asking so they would know how to answer if they were pulled over by the police. Investigators currently have judicial authorization to monitor a temporary GPS device on a white Honda Accord, bearing Arizona license plate A66B88, registered to Marcos Eduardo Amaya-Aldaco. GPS tracks indicate that the Honda was in the Fresno, CA area during this call." |
| 5/14/15 2:57 p.m. | Text: "Marcos amaya aldaco" |
| 5/14/15 5:50 p.m. | Call: "Valdemar greeted UF2568 as cousin. UF2568 stated it was only two. UF2568 said that she weighed them, and in the background a male subject told her that they both weighed one pound. UF2568 relayed the weight to Valdemar and said that she received two. Valdemar confirmed that there were only two. Valdemar said that he would tell 'them' that there were only two. Valdemar asked if she received any for herself, and she said that she was only going to take the type that she liked. Valdemar told her to come with those two, and when everything was good there she could go to Phoenix because he had more there (Phoenix). Valdemar said that he was going to clarify 'that' with 'him' so there was no confusion. U[F]2568 stated she was just packing everything so she could get on the road." |
| 5/15/15 4:11 p.m. | Call: "UF2568 called Valdemar to say she was on the way. Valdemar asked if UF2568 was going to see him first, to which UF2568 acknowledged." |
| 5/17/15 1:09 p.m. | Call: "UF2568 . . . called Valdemar and told him that she still had a day and a half left. UF2568 said that it depended on Cadenas (possibly a driver with UF2568) because he was tired. UF2568 said that she had been thinking, and believed that 'Cartoon' and ''Miguel' were going to do something to Valdemar. Valdemar stated Miguel wasn't around anymore because he had a problem. Valdemar said Cartoon had told |

3

> another individual to take down Valdemar so Cartoon wouldn't have to pay Valdemar. Valdemar then added that Cartoon was hidden but the other individual had told Valdemar right away."[5]

Based on these intercepted calls and text messages, Agent Robl and other investigators believed that "UF2568 [wa]s using (701) 781-2568 . . . to discuss the transportation of illegal drugs from California to Minnesota, and then return to the Phoenix area to pick up additional quantities of illegal drugs."[6]

On May 18, 2015, the Maricopa County (Arizona) Superior Court issued an order authorizing the Phoenix Police Department and the DEA to use "precision location of mobile device on the telephone(s) identified herein (GPS location), and use the signal information collection system to identify the locations of (701) 781-2568 (Target Line #1), and any/all phones in the possession of UF2568" for sixty days.[7] The court found that "there is probable cause to believe that the use of precision location of mobile device and the signal information collection system will aid the applicant by providing information tending to identify the area and user of the target telephone(s)."[8] The court further found that "there are clear and articulable facts sufficient to establish probable cause this telephone is being used in connection with this drug trafficking organization."[9] The order was issued pursuant to 18 U.S.C. § 2703 and A.R.S. § 13-3017(B).

At some point, Arizona law enforcement contacted the DEA's Fargo Resident Office to inform them that UF2568 was on her way to Minnesota to meet with Garcia-Moreno and provide him several units of an unknown drug. On May 26, 2015, the DEA's Phoenix

---

[5] Doc. #123-1 at 5–6.
[6] Id. at 6.
[7] Doc. #151-1 at 3.
[8] Id. at 2.
[9] Id.

4

District Office contacted the Fargo Resident Office to advise them that UF2568's phone was located in the vicinity of a strip mall at 2512 7th Ave. S. in Fargo, North Dakota. DEA agents in Fargo located a black Toyota Camry bearing California license plates in the parking lot of the strip mall.

On May 27, 2015, the Fargo Resident Office was told that UF2568's phone was located in the vicinity of the Red River Lodge at 901 38th Street SW in Fargo. DEA agents in Fargo located the same black Toyota Camry in the hotel parking lot. A Hispanic man and woman entered the vehicle. The agents learned from Red River Lodge management that the Toyota Camry was registered to two guests staying in room 152: Mary Rodriguez Noriega and Robert Reynoso.

Noriega and Reynoso were located in Fargo again on June 1, 2015, after the Phoenix office notified the Fargo Resident Office agents that UF2568's phone was located near the Wingate at 4429 19th Ave. S. Several applications for search warrants authorizing the collection of precision location data from phone numbers with Reynoso listed as subscriber were filed in the following months by the U.S. Attorney's Office in North Dakota. According to the applications, at least one of these phone numbers was allegedly used by Noriega.

## DISCUSSION

1. **Reynoso Lacks Standing to Challenge the Ping Order**.

In his motion, Reynoso joins in "the Motion to Suppress filed by Mary Noriega" and "the representations and legal arguments contained in the brief and support documents."[10] Reynoso makes no assertions that he has any property interest in the target telephone. The target telephone was subscribed to by "Prepaid Customer," used by an unknown female,

---

[10] Doc. #124.

and then located near Noriega multiple times, suggesting that she was the unknown female. It is unclear what property interest or reasonable expectation of privacy Reynoso may have had in the phone. Because Fourth Amendment rights are personal rights that cannot be vicariously asserted, "[a] person who is aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by a search of a third person's premises or property has not had any of his Fourth Amendment rights infringed."[11] Reynoso lacks standing to challenge the Ping Order and benefit from the suppression of any evidence obtained as a result of the order.[12]

### 2. Exclusion of the Evidence Obtained as a Result of the Ping Order Is Not Warranted.

The Ping Order was issued pursuant to 18 U.S.C. § 2703 and A.R.S. § 13-3017(B). Under 18 U.S.C. § 2703, "[a] governmental entity may require a provider of electronic communication service or remote computing service to disclose a record or other information pertaining to a subscriber to or customer of such service (not including the contents of communications)" in a few limited circumstances.[13] As relevant here, the court may either "obtain[] a warrant issued using the procedures described in the Federal Rules of Criminal Procedure (or, in the case of a State court, issued using State warrant procedures) by a court of competent jurisdiction" or "obtain[] a court order for such disclosure under subsection (d) of this section."[14] Subsection (d) states that a court order "shall issue only if the governmental entity offers specific and articulable facts showing that

---

[11] Rakas v. Illinois, 439 U.S. 128, 134 (1978) (citing Alderman v. United States, 394 U.S. 165, 174 (1969)).

[12] See id. at 134 ("And since the exclusionary rule is an attempt to effectuate the guarantees of the Fourth Amendment, it is proper to permit only defendants whose Fourth Amendment rights have been violated to benefit from the rule's protections.").

[13] 18 U.S.C. § 2703(c)(1).

[14] 18 U.S.C. § 2703(c)(1)(A)–(B).

6

there are reasonable grounds to believe that the contents of a wire or electronic communication, or the records or other information sought, are relevant and material to an ongoing criminal investigation."[15] The "specific and articulable facts" standard is a lesser showing than the probable cause needed to obtain a warrant.[16]

A.R.S. § 13-3017 provides for "an ex parte order authorizing the installation and use of a pen register or a trap and trace device."[17] For such an order to be issued, a judge must "find[] that the applicant has certified that the information likely to be obtained by the installation and use is relevant to an ongoing criminal investigation."[18]

The defendants contend that "neither the SCA nor the pen register/trap and trace statutes cover situations where cell phone service providers are required to spend their resources to generate new records about their customers that are unrelated to the provision of cell phone service to the customers."[19] Instead, they contend, "the Fourth Amendment . . . requires law enforcement to obtain a warrant before conducting this precision location tracking."[20] The court need not determine the scope of the SCA—alone or in conjunction with the Arizona pen register/trap and trace statute under a "hybrid theory"—because the

---

[15] 18 U.S.C. § 2703(d).
[16] See, e.g., United States v. Davis, 785 F.3d 498, 505 (11th Cir. 2015) ("[§ 2703(d)'s] statutory standard is less than the probable cause standard for a search warrant."); In re Application of United States for an Order Pursuant to 18 U.S.C. § 2703(d), 707 F.3d 283, 287 (4th Cir. 2013) ("This is essentially a reasonable suspicion standard."); In re Application of United States for Historical Cell Site Data, 724 F.3d 600, 606 (5th Cir. 2013) ("The 'specific and articulable facts' standard is a lesser showing than the probable cause standard that is required by the Fourth Amendment to obtain a warrant."); In re Application of United States for an Order Directing a Provider of Elec. Commc'n Serv. to Disclose Records to Gov't, 620 F.3d 304, 315 (3d Cir. 2010) (The §2703(d) standard is "less stringent than probable cause.").
[17] A.R.S. § 13-3017(A).
[18] A.R.S. § 13-3017(B).
[19] Doc. #123 at 11.
[20] Doc. #123 at 12.

Ping Order was issued upon a showing of probable cause and even if a violation of the Fourth Amendment occurred, law enforcement acted in good faith.

### A. The Ping Order Was the Functional Equivalent of a Warrant Supported by Probable Cause.

In its order, the Arizona state court found that there was a sufficient showing of "probable cause [that] this telephone is being used in connection with this drug trafficking organization."[21] Probable cause exists where, under the totality of the circumstances, "there is a fair probability that contraband or evidence of a crime will be found in a particular place."[22] The state court correctly found that the affiant made a sufficient showing that UF2568 was using (701) 781-2568 to coordinate the transportation of illegal drugs from California and Arizona to Minnesota. The affiant laid out a synopsis of several calls and text messages that appear to describe UF2568's efforts to transport drugs from a source in California and plans to pick up drugs in Phoenix when she returned.

Because it was supported by probable cause rather than merely "specific and articulable facts," the Ping Order was the functional equivalent of a search warrant.[23] "[Noriega and Reynoso] present[] no case authority suppressing the fruits of a real-time cellphone ping order issued upon a sworn showing of probable cause."[24]

---

[21] Doc. 151-1 at 2.

[22] United States v. Solomon, 432 F.3d 824, 827 (8th Cir. 2005) (citing United States v. Murphy, 69 F.3d 237, 240 (8th Cir. 1995)).

[23] See United States v. Ayers, No. 1:11-CR-063, 2014 WL 7392200, at *3 (S.D. Ohio Dec. 29, 2014), report and recommendation adopted, No. 1:11-CR-063, 2015 WL 859498 (S.D. Ohio Feb. 27, 2015) ("The Application for Court Order of which Ayers complains . . . does indeed purport to be made under 18 U.S.C. § 2703(d), but it goes well beyond the requirements of that statute in that it is supported by an affidavit of probable cause such as would be sufficient to support a search warrant under the Fourth Amendment. The statute on its face only requires an application showing 'specific and articulable facts showing that there are reasonable grounds to believe' that the information sought is 'relevant and material to an ongoing criminal investigation.' Even though the Stored Communications Act may not authorize the cellphone real-time ping order, the Common Pleas Judge who issued the Order is certainly authorized under Ohio law to issue search warrants upon proof that satisfies the Fourth Amendment.").

[24] Id.

The defendants also argue that the Ping Order does not meet the requirements of a warrant for a tracking device under Federal Rule of Criminal Procedure 41(e)(2)(c). A "tracking device" is defined by statute as "an electronic or mechanical device which permits the tracking of the movement of a person or object."[25] Under Rule 41(e)(2)(c), the time of tracking "must not exceed 45 days from the date the warrant was issued."[26] The Ping Order here authorized use of the precision location of the mobile device and the S.I.C.S. for 60 days.

Assuming without deciding that the Ping Order needed to be in the form of a Rule 41 warrant for a tracking device, where there is probable cause, shortcomings in technical compliance with Rule 41 does not necessitate application of the exclusionary rule. Rule 41 violations only warrant the application of the exclusionary rule if (1) the defendant is prejudiced or (2) reckless disregard of proper procedure is evident.[27] The defendants cannot demonstrate either ground for exclusion. "To determine prejudice, we ask whether the search would have occurred had the rule been followed. If so, there is no prejudice to the defendant."[28] The defendants cannot show prejudice because their identities were discovered through real-time location tracking within the 45-day period allowed by Rule

---

[25] 18 U.S.C. § 3117.
[26] Fed. R. Cr. P. 41(e)(2)(c).
[27] United States v. Turner, 781 F.3d 374, 387 (8th Cir. 2015) (citing United States v. Bieri, 21 F.3d 811, 816 (8th Cir. 1994)).
[28] Id. (quoting United States v. Hyten, 5 F.3d 1154, 1157 (8th Cir. 1993)).

9

41. Additionally, as discussed in the next section, the law enforcement officers acted in good faith.[29]

### B. The Officers Acted in Good Faith.

Even if the real-time location tracking constituted a warrantless search in violation of the Fourth Amendment, Noriega and Reynoso are not entitled to the suppression of any evidence that resulted from the search because the good faith exception of United States v. Leon, 468 U.S. 897 (1984), applies. The touchstone of a good faith analysis is "whether the officers had an objectively reasonable basis to believe they were complying with [applicable law] and the Fourth Amendment."[30] Suppression is not warranted "when officers act in objectively reasonable reliance upon a *statute*" even if "the statute is ultimately found to violate the Fourth Amendment."[31]

The law enforcement officers' reliance upon the text of the SCA in obtaining the Ping Order was objectionably reasonable. As noted by the Fifth Circuit's recent decision in United States v. Wallace:

> We decide whether the officers acted in objectively reasonable reliance upon the SCA. This inquiry hinges upon whether the officers "had knowledge, or [could] properly be charged with knowledge, that the search was unconstitutional under the Fourth Amendment." Leon, 468 U.S. at 919. There is no evidence that the officers acted in bad faith or adopted an objectively unreasonable interpretation of the SCA's scope. The officers, after consulting the assistant district attorney, obtained a court order granting them access to Wallace's E911 data.[32] Although we do not hold that the SCA necessarily covers the real-time data at issue here, nothing in the text of the statute suggests that "other information" does not encompass E911 data. Given the "strong presumption of constitutionality due to an Act of

---

[29] Id. (quoting United States v. Berry, 113 F.3d 121, 123 (8th Cir. 1997)) ("Reckless disregard" is "akin to 'bad faith'").

[30] United States v. Rodriguez, 834 F.3d 937, 941 (8th Cir. 2016) (alteration in original) (quoting United States v. Conner, 127 F.3d 663, 667 (8th Cir. 1997)).

[31] Illinois v. Krull, 480 U.S. 340, 342 (1987).

[32] "E911" data is another term for the real-time location tracking used in this case.

Congress," United States v. Watson, 423 U.S. 411, 416 . . . (1976), and the absence of controlling caselaw that prohibits the government from obtaining E911 data under the SCA, see United States v. Espudo, 954 F. Supp. 2d 1029, 1044 (S.D. Cal. 2013), it was reasonable for the officers to rely on the text of the statute. The district court did not err by denying Wallace's motion to suppress.[33]

In this case, it was objectionably reasonable for the officers to rely upon a Ping Order issued under the SCA, especially where the Ping Order was supported by probable cause. The good faith exception to the exclusionary rule applies.

## CONCLUSION

For the reasons discussed above, Noriega and Reynoso's motions to suppress are **DENIED**. Noriega's motions to compel seek evidence related to the issues raised in her suppression motion. Since the court finds that the Ping Order was supported by probable cause and there is no basis for exclusion of the evidence, the motions to compel and related motions for a hearing are denied as **MOOT**.

The Clerk is directed to reassign this case to a different judge for trial and for all further proceedings.

**IT IS SO ORDERED.**

Dated this 8th day of May, 2018.

                                       Sitting by designation:

                                       /s/ Ralph R. Erickson
                                       Ralph R. Erickson, Circuit Judge
                                       Eighth Circuit Court of Appeals

---

[33] United States v. Wallace, 885 F.3d 806, 811 (5th Cir. 2018) (alteration in original).

11